IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| CHRISTINE SULTUSKA, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| vs. | ) ) | No. CIV-18-669-C |
| JPMORGAN CHASE BANK, | ) ) ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

Now before the Court is Defendant's Motion for Summary Judgment, along with Plaintiff's Response and Defendant's Reply thereto. (See Dkt. Nos. 28, 34, 40.) Also before the Court is Plaintiff's Motion for Summary Judgment, along with Defendant's Response and Plaintiff's Reply thereto. (See Dkt. Nos. 27, 33, 37.) The motions are now at issue.

I.  Introduction[1]

Plaintiff began working for Defendant as a part-time teller in 2010. During her time there, she was subject to Defendant's attendance policy, which—among other things—provides the parameters for addressing an employee's tardiness. Essentially, the attendance policy permits Defendant to take certain steps to warn the employee as he or she accumulates late arrivals over a 12-month span. Most importantly, though, the policy grants Defendant the authority to dismiss an employee after he or she accumulates nine late arrivals within this time frame. (See Dkt. No. 28-2, p. 4.)

---

[1] Many of the facts necessary to decision of Defendant's Motion are vigorously disputed, but at this stage the facts must be construed in the light most favorable to Plaintiff. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

In August 2015, Danielle Ford became Plaintiff's direct supervisor. At some point thereafter, Plaintiff began struggling to show up to work on time. Indeed, as early as December 2015, Ford began to take note of Plaintiff's tardiness. Throughout the early months of 2016, Ford remained aware of this and discussed it with Plaintiff multiple times. By June 2016, though, Defendant's records reflected that Plaintiff had accumulated eight late arrivals. (See Dkt. No. 28-12.) Under Defendant's attendance policy, then, she was one late arrival away from being subject to dismissal. On June 24, 2016, Defendant issued Plaintiff a Written Warning detailing her late arrivals and cautioning her that "[i]mmediate and sustained improvement is required." (Id.)

In 2013, Plaintiff injured her neck in an Oklahoma tornado. Her injuries required extensive medical treatment—including surgery around May 2015. By March 2016, though, it became clear to Plaintiff and her doctor that the surgery was unsuccessful, and that she would likely need an additional one. (Dkt. No. 34-36.) So, at that point, Plaintiff began consistently updating Ford about this. Plaintiff also spoke with Ford multiple times about her injuries causing her tardiness. She recalls, moreover, that Ford criticized her for mentioning her neck issues at work. (Dkt. 34-12, p. 5.) By June 27, 2016, Plaintiff's doctor had essentially determined that Plaintiff should undergo a second surgery stemming from the 2013 tornado, but had not yet confirmed a specific date. (Dkt. No. 34-37.) Plaintiff soon thereafter communicated this to Ford.

On or around June 28, 2016, Plaintiff approached Henry Patton, a Market Director for Defendant, and Ford's supervisor. She complained to Patton that she believed Ford began targeting her ever since Ford learned that Plaintiff would need medical leave for her upcoming surgery. (Dkt. No. 34-12, pp. 17, 20-21.) Patton notified Ford that Plaintiff approached him, and the next day, Ford directly confronted Plaintiff about this. About a week later, on July 8, 2018,

2

Plaintiff received a subpar performance review—consisting mostly of Ford marking "needs improvement" in every category, without offering any explanation. (Dkt. No. 34-25.)

On August 23, 2016, Plaintiff arrived to work eight minutes late—marking her ninth late arrival over the past 12 months. As a result, later that day, Ford and Patton jointly decided to move to dismiss Plaintiff. (Dkt. No. 28-23; Dkt. No. 28-21, p. 5.) Ford then contacted Defendant's HR department and requested to terminate Plaintiff, based solely on her excessive tardiness. Though multiple HR officials believed these grounds for termination were somewhat "petty," by the next day, August 24, 2016, HR had approved Ford's request to terminate Plaintiff. (Dkt. No. 34-9, p. 1.) That same day, Plaintiff requested medical leave for her upcoming surgery. Plaintiff was ultimately dismissed on August 25, 2016. The lone justification Defendant proffered for Plaintiff's termination was her violation of its attendance policy.

Plaintiff then initiated this litigation, arguing that Defendant violated her rights under the Americans with Disabilities Act ("ADA") and the Oklahoma Anti-Discrimination Act ("OADA"). Specifically, she advances discrimination and retaliation claims under both the ADA and the OADA.[2] Defendant now moves for summary judgment—maintaining that the undisputed record demonstrates it acted appropriately and terminated Plaintiff for a legitimate business reason: her excessive tardiness.

I. Standard

A key policy goal and primary principle of Fed. R. Civ. P. 56 is "to isolate and dispose of

---

[2] The protections provided under the OADA are "'co-extensive with the protections provided by federal law under the ADA.'" Hamilton v. Okla. City Univ., 911 F.Supp.2d 1199, 1201 (W.D. Okla. 2012) (citation omitted). So the fate of Plaintiff's OADA discrimination claim is intertwined with that of her ADA claim. Id. But a retaliation claim under the OADA is not cognizable under law. See Edwards v. Andrews, 2016 OK 107, ¶ 9, 382 P.3d 1045, 1047. Plaintiff's OADA retaliation claim will therefore be dismissed.

3

factually unsupported claims or defenses." Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

Fed. R. Civ. P. 56 sets the standard for summary judgment:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).

Summary judgment is appropriate "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). It is also well established that the "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion . . . which it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 322. "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (footnote omitted). "In its review, the Court construes the record in the

4

light most favorable to the party opposing summary judgment." Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

II. Analysis

a. Defendant's Summary Judgment Motion

Defendant seeks summary judgment on both of Plaintiff's central claims: (1) Discrimination under the ADA; and (2) Retaliation under the ADA.

The ADA makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

According to Defendant, Plaintiff cannot make out a prima facie case for either of her claims. Even so, Defendant contends, Plaintiff cannot demonstrate that Defendant's business justification for firing Plaintiff was pretextual. Plaintiff maintains, however, that she has provided sufficient evidence to meet each of her burdens for both of her claims.

1. ADA Discrimination

Defendant first moves to dismiss Plaintiff's ADA discrimination claim. When a plaintiff attempts to demonstrate employment discrimination under the ADA, courts apply the three-step burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). First, the aggrieved employee must establish a prima facie case of prohibited employment action. McDonnell Douglas, 411 U.S. at 802. A prima facie case here requires Plaintiff to show that she: "(1) is a disabled person as defined by the ADA; (2) is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) suffered

discrimination by an employer or prospective employer because of that disability." Justice v. Crown Cork & Seal Co., Inc., 527 F.3d 1080, 1086 (10th Cir. 2008).

The "burden of establishing a prima facie case" is "'not onerous,'" McCowan v. All Star Maintenance., Inc., 273 F.3d 917, 922 (10th Cir. 2001), but it is also "not empty or perfunctory." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 59 (4th Cir. 1995). If the employee makes a prima facie showing, the burden shifts to the defendant employer to state a legitimate, "nondiscriminatory reason for the adverse employment action." Wells v. Colo. Dep't of Transp., 325 F.3d 1205, 1212 (10th Cir. 2003) (internal quotation marks and citation omitted). This burden "is one of production, not persuasion; it can involve no credibility assessment." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000) (internal quotation marks and citations omitted).

If the employer meets this burden, then summary judgment is warranted unless the employee can show there is a genuine issue of material fact as to whether the proffered reasons are pretextual. Jones v. Denver Post Corp., 203 F.3d 748, 756 (10th Cir. 2000). Pretext may be demonstrated by "'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.'" Olson v. General Elec. Astrospace, 101 F.3d 947, 951-52 (3d Cir. 1996) (quoting Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994) (further citation omitted)). "[M]ere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." Branson v. Price River Coal Co., 853 F.2d 768, 772 (10th Cir. 1988).

First, regarding the prima facie case, Defendant only disputes the causation prong. To meet its burden at this stage of the analysis, then, Plaintiff must "present some affirmative evidence that disability was a determining factor in the employer's decision." Morgan v. Hilti, Inc., 108 F.3d 1319, 1323-24 (10th Cir. 1997). Here, Plaintiff has presented evidence that: (1) Defendant was aware of Plaintiff's ongoing medical issues and her need to eventually take medical leave for a second surgery; (2) Ford criticized Plaintiff for talking about her neck issues at work; (3) Plaintiff attempted to explain to Ford that her tardiness was caused, at least in part, by her neck issues; and (4) Defendant's HR officials believed Ford's push to dismiss Plaintiff over her tardiness was trivial. The Court finds that Plaintiff has met her burden. The burden now shifts to Defendant to provide a nondiscriminatory reason for terminating Plaintiff. The sole reason Defendant has provided—both at the time of her firing and now before the Court—is that Plaintiff violated Defendant's attendance policy by accumulating nine late arrivals over a 12-month period. The Court finds that Defendant has met its burden.

So the burden now shifts back to Plaintiff to establish pretext. One way she attempts to do so is by undermining the factual basis of Defendant's termination justification. Indeed, she calls into question the accuracy of Defendant's count of her late arrivals by demonstrating that, on two of the dates listed by Defendant—January 27 and June 7—she was not actually tardy. (See Dkt. No. 34-15, 34-16.) Defendant adequately explains the June 7 discrepancy by presenting evidence that it was the result of a scrivener's error—clarifying that June 3 was the intended date. But Defendant did not offer a substitute date or present any other evidence regarding the alleged January 27 late arrival.

This is pivotal. First, the lone justification Defendant has advanced for Plaintiff's dismissal is excessive tardiness. Defendant has consistently maintained, moreover, that Plaintiff acquired

nine late arrivals—nothing more, nothing less. Finally, Defendant's attendance policy requires nine late arrivals to justify termination—Defendant has presented no evidence that it retained the authority to dismiss an employee for anything less. (See Dkt. No. 28-2, p. 4.) In short, Defendant's justification turns on whether Plaintiff had nine late arrivals.

The Court finds that Plaintiff has demonstrated a factual dispute regarding whether Defendant's proffered justification for dismissing her was pretextual. Defendant will be denied summary judgment on this claim, as well as Plaintiff's corresponding OADA discrimination claim.

### 2. ADA Retaliation

Defendant next moves to dismiss Plaintiff's claim for retaliation under the ADA. The ADA's retaliation statute provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter . . . ." 42 U.S.C. § 12203(a). And similar to Plaintiff's discrimination claim, this claim is subject to the McDonnell Douglas burden shifting analysis. Consequently, Plaintiff must first establish a prima facie case of ADA retaliation which requires her to show: "'(1) that [she] engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action.'" Proctor v. United Parcel Service, 502 F.3d 1200, 1208 (10th Cir. 2007) (citation omitted). If she does so, the burden shifts to the employer to provide a nondiscriminatory reason for the adverse action. And if the employer meets its burden, the burden then shifts back to Plaintiff to demonstrate pretext. See McDonnell Douglas, 411 U.S. at 804.

Defendant disputes whether Plaintiff can meet two elements of the prima facie case—protected activity and causation. To make her prima facie case for retaliation, Plaintiff largely relies on the fact that she complained to Ford's boss that Ford was targeting her because of her upcoming leave. According to Plaintiff, Ford then confronted her and subsequently gave her a substandard performance evaluation—the worst she had received to date—and, along with Patton, moved to terminate her seven weeks later. (Dkt. No. 34, pp. 33-34.) In Plaintiff's view, this is sufficient to raise the inference of retaliation.

Plaintiff has certainly presented evidence demonstrating that she engaged in protected opposition to discrimination by complaining that she believed she was being targeted by Ford over her impending medical leave. See 42 U.S.C. § 12203(a). It is less clear, though, whether she has shown that she was terminated as a result of her protected activity. Construing the facts in the light most favorable to her, Ford and Patton moved to terminate her about seven weeks after she complained about being targeted by Ford.

This time period falls within a gray area in Tenth Circuit precedent: "[W]e have held that a one and one-half month period between protected activity and adverse action may, by itself, establish causation. By contrast, we have held that a three-month period, standing alone, is insufficient to establish causation." Anderson v. Coors Brewing Co., 181 F.3d 1171, 1179 (10th Cir. 1999). Because seven weeks is much closer to a month and a half than three months, the Court finds that Plaintiff has met her burden of establishing the proper temporal proximity between her protected activity and her termination. Accordingly, Plaintiff has established a prima facie case for ADA retaliation.

The burden now shifts to Defendant to articulate a legitimate nondiscriminatory reason for dismissing Plaintiff. Defendant solely relies, once again, on the fact that Plaintiff violated its

attendance policy.  Defendant has met its burden.  But as the burden shifts back to Plaintiff to demonstrate pretext, the Court need not re-examine Defendant's justification.  As established above, Plaintiff has sufficiently called into question whether or not she even accumulated nine late arrivals.  The Court thus finds that Plaintiff has raised a genuine issue of material fact regarding whether Defendant's decision to terminate her was pretextual.  Defendant will be denied summary judgment on this claim as well.

    b.  Plaintiff's Summary Judgment Motion

Plaintiff moves for summary judgment on three of Defendant's defenses: arbitration, lack of standing, and failure to mitigate damages.  Essentially, Plaintiff believes that Defendant should be foreclosed from advancing these arguments moving forward.  Upon review, the Court will deny Plaintiff's motion.

First, Plaintiff moves to prevent Defendant from moving for arbitration at this point, citing the current stage of litigation.  Defendant, for its part, agrees that it has fully participated in litigation and has essentially waived its arbitration defense. (Dkt. No. 33, p. 1-2.)  Accordingly, the Court finds that Plaintiff's relief regarding this defense should be denied as moot.

Plaintiff next attempts to eliminate any defense Defendant may raise concerning standing.  In her view, her standing before the Court is clear and should be insulated from any future challenge Defendant may present to it.  But, as Defendant points out, standing is a jurisdictional prerequisite to suit that may be considered at any stage of litigation.[3]  See Nat'l Org. for Women,

---

[3] Defendant is mistaken, though, to conflate standing with Plaintiff's status as a disabled person under the ADA.  Demonstrating her disability is simply part of her burden to carry while proving her ADA discrimination claim.  See Crown Cork & Seal, 527 F.3d at 1086.  Nevertheless, Defendant only stipulated for purposes of its summary judgment motion that Plaintiff was disabled under the ADA. (Dkt. No. 28, p. 16.)  So it may challenge her disabled status moving forward, but this will not affect Plaintiff's standing to bring this suit.

Inc. v. Scheidler, 510 U.S. 249, 255 (1994). So the Court finds that it is without authority to grant Plaintiff relief on this claim.

Finally, Plaintiff seeks to negate Defendant's "failure to mitigate" defense. (Dkt. No. 27, p. 13.) Here, she contends that Defendant has failed to produce any evidence indicating that Plaintiff failed to mitigate her damages after her termination. In response, Defendant essentially agrees. (Dkt. No. 33, p. 3) ("[Defendant] maintains that Plaintiff did in fact mitigate her damages."). It nonetheless further urges the Court to limit any damages Plaintiff may be awarded. While Defendant's request will need to be addressed outside the context of this motion,[4] the Court finds that Plaintiff's relief here should be denied as moot.

III. Conclusion

For the reasons outlined above, Defendant's Motion for Summary Judgment (Dkt. No. 28) is GRANTED in part and DENIED in part. Specifically, it is denied regarding Plaintiff's ADA discrimination claim, her ADA retaliation claim, and her OADA discrimination claim, but granted regarding her OADA retaliation claim. Additionally, Plaintiff's Motion for Summary Judgment (Dkt. No. 27) is DENIED.

IT IS SO ORDERED this 3rd day of October, 2019.

ROBIN J. CAUTHRON
United States District Judge

---

[4] After conceding that Plaintiff mitigated her damages, Defendant further urged the Court to "enter an Order determining as a matter of law that Plaintiff's potential backpay damages amount is limited to no more than eight days wages (excluding the intervening weekend)." (Dkt. No. 33, p. 3.) But Plaintiff moved for summary judgment on the limited question of whether Defendant's failure to mitigate defense should be dismissed. To the extent Defendant seeks to prospectively limit Plaintiff's damages, it should submit a separate motion, supported by evidence, to do so.

11